AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>INFORMATION FROM CELLPHONE ASSIGNED CALL<br>NUMBER (937) 776-6716 | )<br>)<br>)<br>)<br>)<br>)    Case No.    3 : 16 mj 100 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☑ contraband, fruits of crime, or other items illegally possessed;

   ☐ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1) | distribution of controlled substances |
| 21 USC s. 843(b) | use of a telephone communication facility |
| 21 USC s. 846 | conspiracy to distribute controlled substances |

The application is based on these facts:

Attached Affidavit of Steve Lucas

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steve Lucas, Special Agent of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date:    04/18/2016

_____
*Judge's signature*

City and state:    Dayton, Ohio

Michael Newman, US Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLULAR TELEPHONE ASSIGNED CALL NUMBER **(937)776-6716** WITH INTERNATIONAL MOBILE EQUIPMENT IDENTITY ("IMEI") NUMBER 990004895654110 | Case No. **Filed Under Seal** |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Steven M. Lucas, being first duly sworn, hereby depose and state as follows:

## I.

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at a premises owned, maintained, controlled, or operated by Verizon Wireless (Law Enforcement Resource Team Court Compliance Group) a wireless provider located at 180 Washington Valley Road, Bedminster, New Jersey under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) to require Verizon Wireless to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the accounts, including the contents of communication of the cellular telephone assigned call number (937)776-6716, with International Mobile Equipment Identity ("IMEI") number 990004895654110, placed in the subscriber name of Derrick TARRNCE with an address of 1556 Aberdeen Court, Vandalia, Ohio (hereinafter referred to as "**Target Telephone**") whose service provider is Verizon Wireless, a wireless telephone service provider located in 180 Washington Valley Road,

Bedminster, New Jersey. The Target Telephone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.      Affiant is a Special Agent for the United States Drug Enforcement Administration ("DEA") within the meaning of Title 21, United States Code, Section 878, that is an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 21, United States Code, Section 878. Affiant has been employed as a Special Agent with the DEA since June 2005 and worked at the DEA office in Dayton, Ohio since December 2005. Prior to that time, between September 1995 and June 2005, Affiant was employed by the Schererville Police Department. Since the time of Affiant's employment with the DEA, Affiant has been involved in narcotics related arrests, executed search warrants that resulted in the seizure of narcotics, participated in undercover narcotics purchases, and supervised the activities of informants who have provided information and assistance in drug trafficking investigations of an international scope. Through training and experience, Affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate.

3.      The facts in this affidavit come from my personal observations, my training and experience, the review of certain records, as well as information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841 (distribution of controlled substances); 21 U.S.C. § 843(b) (use of a telecommunication facility to facilitate a controlled substance offense); and 21 U.S.C. § 846 (conspiracy to distribute controlled substances) have been committed, are being committed, and will continue to be committed by Derrick TARRANCE ("TARRANCE"), Asina VALENTINE

("VALENINTE") and others not yet identified.  There is also probable cause to search the

information described in Attachment A for evidence of these crimes, as described in Attachment

B will constitute evidence of these criminal violations; will help identify contraband, fruits of

crime, or other items illegally possessed, and will lead to the identification of other

coconspirators who are engaged in the commission of these offenses.

## II.

### PROBABLE CAUSE

5.    The DEA Dayton RO has been investigating an international narcotics smuggling

organization based in Mexico with ties to Dayton, Ohio. Affiant is aware that Derrick

TARRANCE is a large cocaine supplier in the Dayton, Ohio area.  In particular, during 2002,

law enforcement interviewed a Cooperating Defendant ("CD"), who stated that TARRANCE

was supplying 25 to 30 kilograms of cocaine at a time to a subject known to investigators (who,

for purposes of this affidavit, is referred to as "MH") and that MH then had several other

individuals in Dayton, Ohio distributing the cocaine for him.

6.    On or about August 21, 2015, an undercover DEA agent ("UC") who was posing

as a drug money courier met with Roderick McCullough ("MCCULLOUGH") at  Love's Truck

Stop, 2217 Edwin C. Moses Boulevard, Dayton, Ohio.  During the meeting, MCCULLOUGH

gave the UC a cardboard box later found to contain approximately $444,571 in suspected drug

proceeds.

7.    On or about September 14, 2015, another undercover operation was conducted

and an undercover DEA agent ("UC") again posed as a drug money courier.  Through a series of

phone calls, an individual later identified as TARRANCE intimated to the UC that he,

TARRANCE, was also involved (though not present) in the prior incident on August 21, 2015.

TARRANCE ultimately arranged to meet the UC at Love's Truck Stop, 2217 Edwin C. Moses

Boulevard, Dayton, Ohio at approximately 5:00 p.m.

8.      TARRANCE proceeded to meet with the UC at the agreed upon time and
location.  Once there, TARRANCE directed the UC to move across the street to a McDonald's
parking lot; TARRANCE indicated that another person would be waiting there for the UC.
Consistent with TARRANCE's instructions, the UC proceeded to the McDonald's parking lot,
where he met with an individual later identified as Terrance Turner ("TURNER").  TURNER
was driving a blue Chevrolet Silverado pickup in the McDonald's lot.  Turner then directed the
UC to a cardboard box in the back of the Silverado.  While this was transpiring, TARRANCE
circled the McDonald's lot, monitoring the exchange.  The UC took the box, placed it in his
undercover vehicle, and then drove away.  Upon opening the box, investigators discovered a
large sum of United States currency – namely, $486,000.  Given my training and experience, I
know that, given the clandestine nature of the money exchange, including the movements of
TARRANCE and his accomplice to various parking lots, as well as the amount of bulk cash
involved in the transaction, the $486,000 represented either drug proceeds or funds being used to
purchase kilogram quantities of a controlled substance.

9.      Upon identifying TARRANCE as a participant in the above described transaction,
law enforcement conducted queries through various databases and identified a residential listing
associated with him – namely, 1556 Aberdeen Court, Vandalia, Ohio. TARRANCE has been
observed at the residence numerous times and the **Target Telephone** is subscribed to this
address.

10.     On September 17, 2015, a third money pickup was arranged between the UC and
TARRANCE. A series of recorded calls were made between the UC and TARRANCE with
TARRANCE using cellular telephone 937-469-4831.  The UC attempted over the next two days
to contact TARRANCE and spoke with a female believed to be VALENTINE on the cellular

telephone. VALENTINE arranged TARRANCE to call the UC back and appeared to understand the nature of the transaction taking place. Ultimately, the money pickup did not happen, and TARRANCE indicated there was a "problem." It is unknown if the problem was law enforcement presence or another unknown issue. The 937-469-4831 phone was ultimately tracked via a court authorized tracking warrant. Over the course of surveillance conducted during fall 2015, the phone traveled with VALENTINE and was commonly in the residence located at 804 Bradfield, Trotwood, Ohio, known to be her residence. Affiant believes VALTENTINE is the user of the 937-469-4831 phone.

11. On or about March 7, 2016, investigators, including your affiant, conducted surveillance at 804 Bradfield. Investigators observed TARRANCE depart the residence in a white Ford250 after being at this house only a short time. Investigators attempted to follow TARRANCE and observed him proceed to TNT trucking.

12. On or about March 14, 2016, UC involved in the money pickups described above contacted VALENTINE at the 937-469-4831 telephone; speaking in code, the UC advised VALENITNE that he was looking for TARRANCE to sell him cocaine. During the call, the UC used the same names for TARRANCE and himself as had been used during the third (albeit aborted) money pickup described above. VALENTINE stated that she understood the UC and would have him (*i.e.,* TARRANCE) call the UC.

13. Affiant reviewed the toll records for 937-469-4832. These records revealed that, after receiving the call from the UC on March 14, 2016, VALENTINE'S phone (*i.e.*, 937-469-4831) had approximately 10 contacts with the **Target Telephone.** Given that each of the contacts was of zero duration, each contact appears to reflect a text message between VALENTINE'S phone and the **Target Telephone**, which is subscribed in the name of TARRANCE**.** Based on my training and experience, I believe that these text messages between

VALENTINE'S phone and the **Target Telephone** will reflect conversations related to, among other things, the UC and drug trafficking activity.

14.    Affiant believes that TARRANCE and VALENTINE (both of whom have prior criminal histories and had contact in September 2015 with a DEA UC) are involved in an ongoing criminal drug conspiracy. Further, Affiant believes that the preserved text messages for the **Target Telephone**, between the dates of March 13, 2016 up to and including March 22, 2016 will provide information related to the ongoing criminal conspiracy involving TARRANCE, VALENTINE, and others.

15.    In my training and experience, I have learned that Verizon Wireless is a company that provides cellular telephone access to the general public, and that stored electronic communications, including retrieved and un-retrieved voicemail, text and multimedia messages for Verizon Wireless subscribers may be located on the computers of Verizon Wireless. Further, I am aware that computers located at Verizon Wireless contain information and other stored electronic communications belonging to unrelated third parties.

16.    Among the services commonly offered by wireless phone providers is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by Verizon Wireless for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

17.     Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail and text messaging account on their systems.  This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages.  Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

18.     Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages.  A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it.  Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

19.     I anticipate executing this warrant under the Electronic Communications Privacy

Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant

to require Verizon Wireless to disclose to the government copies of the records and other

information (including the content of communications) particularly described in Section I of

Attachment B.  Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in

Section II of Attachment B.

20.     Based on the foregoing, I request that the Court issue the proposed search

warrant.

21.     This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  Specifically, the Court is "a district

court of the United States (including a magistrate judge of such a court). . . that – has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

22.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

23.    Based on the facts set forth in the affidavit, your Affiant believes that there is probable cause to believe that cellular telephone (937) 776-6716, was used by TARRANCE up to at least March 22, 2106 and in furtherance of illegal drug trafficking activities.  Furthermore, your Affiant believes that the text messages preserved, at the request of your Affiant by Verizon Wireless, will contain evidence of the ongoing drug trafficking

Steven M, Lucas
Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on _____ , 2016.


HONORABLE MICHAEL NEWMAN
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **(937) 776-6716** that is stored at premises owned, maintained, controlled, or operated by Verizon Wireless, (Law Enforcement Resource Team Court Compliance Group), a wireless provider located at 180 Washington Valley Road, Bedminster, New Jersey.

**ATTACHMENT B**

**Particular Things to be Seized**

**I. Information to be disclosed by Verizon Wireless**

To the extent that the information described in Attachment A is within the possession,

custody, or control of Verizon Wireless, Verizon Wireless is required to disclose the following

information to the government for each account or identifier listed in Attachment A:

     a.     All voice mail, text, and multimedia messages stored and presently contained in,

           or on behalf of the account or identifier for the period March 12, 2013, 2016

           through to include March 22, 2016.;

     b.     All existing printouts from original storage of all of the text messages described

           above;

     c.     All text messaging logs, including date and time of messages, and identification

           numbers associated with the handsets sending and receiving the message;

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and

instrumentalities of violations of 21 U.S.C. § 841 (distribution of controlled substances); 21

U.S.C. § 843(b) (use of a telecommunication facility to facilitate a controlled substance offense);

and 21 U.S.C. § 846 (conspiracy to distribute controlled substances), from March 13, 2016

through March 22, 2016, including, for each account or identifier listed on Attachment A,

information pertaining to the following matters:

     a.     Any information in any format concerning, relating to, or reflecting the sale of illegal

           drugs, including, but not limited to: quantities and price of illegal drugs available for

           sale; negotiations concerning the sale or delivery of illegal drugs; the delivery or

           shipment of proceeds from the sale of illegal drugs; discussions of bulk cash or high

value assets or real property; counter-surveillance techniques or concerns over possible law enforcement detection of their drug scheme; locations at which illegal drugs or the proceeds therefrom are stored, processed, or distributed.

b.    Communications between TARRANCE, VALENTINE or other co-conspirators concerning the UC or prior deliveries of bulk cash.

c.    Records relating to who created, used, or communicated with the account or identifier, including records about their identities and whereabouts.